**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM TAYLOR**<br>**Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-1350** |
| **BETH STUEBNER, *et al.*,**<br>**Defendants.** | : | |

**MEMORANDUM**

**GALLAGHER, J.** **AUGUST 14, 2026**

Plaintiff William Taylor ("Taylor"), who is currently confined at SCI Camp Hill, brings this *pro se* action alleging that his constitutional rights were violated while he was housed at SCI Phoenix. For the following reasons, the Court will grant Taylor's application to proceed *in forma pauperis* and screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). As explained below, Taylor's Complaint will be dismissed in part and served in part.

## I. FACTUAL ALLEGATIONS[1]

Taylor alleges that he was held down while prison staff forcefully injected him with antipsychotic medications against his will. He names Registered Nurse Beth Stuebner, Lieutenant Judge, Wellpath, Lieutenant C. Hartless, Deputy Superintendent of Centralized Services Charles Hensley, Superintendent Joseph Terra, the SCI Phoenix Medical Director, and Director of the Bureau of Investigations and Intelligence James Banracle as Defendants. (Compl. at 2-3.) Defendants are named in their official and individual capacities. (*Id*. at 4.) Taylor claims that he suffered physical and emotional injuries as a result of Defendants' actions. (*Id*. at 8.)

Taylor states that on May 2, 2025, while he was housed in a psychiatric observation cell at

---

[1] The facts are taken from Taylor's Complaint (ECF No. 2). The Court adopts the pagination supplied by the CM/ECF docketing system.

SCI Phoenix, he was "approached and held down by John Does 1-4," at the direction of Lieutenant Judge. (*Id*. at 4.) According to Taylor, Defendant Stuebner injected him with the antipsychotic drug, Haldol, despite Taylor's protests to stop. (*Id*. at 4-5) Taylor's medical charges reflect that he cannot have Haldol due to "prior negative effects" of the drug. (*Id*. at 4.) The medication caused Taylor's joints to lock up and caused him pain. (*Id*.) Dr. G, who is not named as a Defendant, told Taylor that Stuebner had no authority to give the injection. (*Id*.) Taylor alleges that the use of force and involuntary and forceful administration of medication violated DC-ADM policy. (*Id*. at 7.)

Neither Wellpath nor the SCI Phoenix Medical Director of SCI Phoenix reprimanded Stuebner. (*Id*. at 5, 6.) Superintendent Terra, as well as Hensley, the Deputy Superintendent of Centralized Services, also failed to reprimand Stuebner. (*Id*. at 6, 7.) After Taylor lodged a complaint, Defendant Hartless was assigned to investigate the claim of "abuse." (*Id*. at 5.) In accordance with DC-ADM policy, the result of Hartless's "sham" investigation was forwarded to Barnacle, the Director of the Bureau of Investigations and Intelligence. (*Id*. at 6.) Barnacle concluded that Taylor's allegations of abuse were "unfounded." (*Id*.) Taylor claims that Defendants engaged in a "consorted effort to cover-up the actions of" Stuebner, Judge, and John Does 1-4. (*Id*. at 7.)

Based on these allegations, Taylor claims that Defendants violated his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. (*Id*. at 9 -10.) He also asserts state law claims for assault and battery and intentional infliction of emotional distress. (*Id*. at 10-11.) He seeks money damages, a declaration that each Defendant violated his rights, and an injunction "mandating specific policy revisions" about forced medications.[2] (*Id*. at 13.)

[2] Taylor's claim for declaratory relief will be denied because it merely seeks to adjudicate past conduct, which is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per*

## II. STANDARD OF REVIEW

The Court grants Taylor leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Taylor's favor, and "ask only whether [the] complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Taylor is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Taylor asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under

---

*curiam*) (noting that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another").

[3] Because Taylor is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

§ 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[4] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

**A. Claims Against Stuebner, Judge, and John Does 1-4**

The Court understands Taylor to assert constitutional claims against Stuebner, Judge, and John Does 1-4 based on allegations that they held him down and injected with anti-psychotic medications against his will and without authorization. "[C]onvicted prisoners[] . . . retain a limited right to refuse treatment," although this right must also be balanced against valid state interests. *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990); *see also Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (holding that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth

---

[4] Taylor sues Defendants in both their individual and official capacities. (Compl. at 4.) Official capacity claims against a defendant are indistinguishable from claims against the entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, Taylor's § 1983 "official capacity" claims for damages against the Defendants—all of whom are employed by the Pennsylvania Department of Corrections—are really claims against the Commonwealth, which is shielded from such claims by Eleventh Amendment immunity and, in any event, is not considered a "person" subject to liability under § 1983. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). The rest of the Court's analysis will focus on the damages claims against the Defendants in their individual capacities.

Amendment" that must be balanced against the state's legitimate interests). However, "a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives." *White*, 897 F.2d at 113 (3d Cir. 1990); *see also Aruanno v. Glazman*, 316 F. App'x 194, 195 (3d Cir. 2009) ("[T]he decision of a medical professional to force medicate a prisoner is presumed valid, 'unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'" (quoting *White*, 897 F.2d at 113)). The Court of Appeals for the Third Circuit has also construed forced medication claims brought by prisoners under the Eighth Amendment. *See Aruanno*, 316 F. App'x at 195 (analyzing forced medication claim under Eighth Amendment and Due Process Clause).

Taylor alleges that he was held down against his will and forcefully injected with Haldo despite his protests against it. He also alleges that the administration of Haldol was unauthorized, as clearly indicated in his charts. Taylor claims that he suffered physical and emotional injuries from the medication. At this early stage of the litigation, Taylor has stated plausible constitutional and related state law claims against Stuebner, Judge, and John Does 1-4. These claims may proceed to service.

**B. Claims Against Barnacle and Hartless**

The Court understands Taylor to assert constitutional claims against Barnacle and Hartless based on how they handled his "complaint of abuse" about being forcibly injected with Haldol. Taylor alleges that Hartless "circumvented" policies and procedures to conduct a "sham" investigation into Taylor's claim. (Compl. at 5-6.) He also alleges that the results of Hartless's

investigation were forwarded to Barnacle, "who despite the evidence, facts, and policy," concluded that the allegations of abuse were "unfounded." (*Id*. at 6.)

Taylor's claims against Barnacle and Hartless must be dismissed because there is no constitutional right to an investigation. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)). Moreover, to the extent Taylor's claims against Barnacle and Hartless are based on their alleged denial of his grievance, the claims must also be dismissed because a prisoner has no constitutional right to a grievance process. *See Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### C. Claims Against Terra, Hensley, and the SCI Phoenix Medical Director

Taylor also asserts supervisory claims against Superintendent Terra, Deputy Superintendent of Centralized Services Hensley, and the SCI Phoenix Medical Director, alleging that they failed to reprimand Stuebner after Stuebner forcibly medicated Taylor with antipsychotic drugs. Supervisors like Terra, Hensley, and the SCI Phoenix Medical Director can only be found liable for the unconstitutional acts undertaken by their subordinates in two scenarios. First, a supervisor may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom, which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by*

*Taylor v. Barkes*, 575 U.S. 822 (2015) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*. "Failure to" claims, such as a failure to train, failure to discipline, or failure to supervise, are generally considered a subcategory of policy or practice liability. *Id.* at 316-17.

Taylor's sole assertion against Terra, Hensley, and the SCI Phoenix Medical Director is that they failed to reprimand Stuebner after the alleged incident. However, "to hold a supervisory official responsible for knowledge and acquiescence in a subordinate's constitutional violation, a plaintiff must allege a supervisor's *contemporaneous knowledge* of the subordinate's misconduct." *Dorsey v. Mahon*, No. 22-936, 2022 WL 4773201, at *4 (D.N.J. Oct. 3, 2022). Here, Taylor alleges that Terra, Hensley, and the SCI Phoenix Medical Director failed to respond appropriately by punishing Stuebner *after* the incident occurred, which is not sufficient to state a plausible claim. *See id*. (dismissing failure to reprimand claim against warden); *see also Mendez v. Pennsylvania*, No. 21-1780, 2021 WL 4262316, at *2 (E.D. Pa. Sept. 20, 2021) (dismissing claim against superintendent when the plaintiff "simply maintains she failed reprimand certain correctional officers for their conduct toward him").

Moreover, simply being notified about an alleged constitutional violation after it happened is not sufficient to establish a causal link between the constitutional harm and the Defendants' actions to establish personal involvement. *See Ricker v. Weston*, 27 F. App'x 113, 119-20 (3d Cir. 2002) (concluding that a decision not to discipline does not establish personal involvement "given that all of the injuries occurred before the decision" and "[t]here is simply no causal link between

those injuries and what [the defendants] did or did not do"); *Williams v. Wetzel*, No. 23-1235, 2025 WL 908406, at *2 (W.D. Pa. Mar. 26, 2025) ("[A]fter-the-fact notice is not sufficient to establish personal involvement."). Accordingly, all claims asserted against Terra, Hensley, and the SCI Phoenix Medical Director must also be dismissed.

**D. Claims Against Wellpath**

Taylor asserts constitutional claims against Wellpath, a private company that contracts with SCI Phoenix to provide medical care to inmates. To plead a § 1983 claim against a prison medical provider like Wellpath, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (*citing Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

Taylor has not stated a plausible claim against Wellpath. First, it appears Taylor sues Wellpath simply because of its role as Stuebner's employer. However, "a private health company

providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims*, 635 F. App'x at 20 (*per curiam*) (quoting *Natale*, 318 F.3d at 583). Second, Taylor does not allege the existence of any Wellpath policy or custom let alone that any such policy caused his alleged constitutional harm. Finally, Taylor's allegation that Wellpath "mismanage[d]" staff "*after*" it became aware of the forced medication incident does not support an inference that any action or omission by Wellpath was the proximate cause of his injuries. Accordingly, all claims against Wellpath must also be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Taylor leave to proceed *in forma pauperis* and dismiss his Complaint in part. Taylor's claims asserted against Stuebner, Judge, and John Does 1-4 pass statutory screening under § 1915 and may proceed to service. However, Taylor's claims against Barnacle, Hartless, Hensley, Terra, SCI Phoenix Medical Director, and Wellpath will be dismissed. Moreover, Taylor's request to appoint counsel will be denied.[5]

---

[5] Pursuant to § 1915(e), the Court may request an attorney to represent an indigent plaintiff in a civil action. *See* 28 U.S.C. § 1915(e)(1). Although district courts have broad discretion to request counsel for indigent *pro se* litigants, appointment of counsel is not a statutory or constitutional right of the litigant, but rather a privilege. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011) (citation omitted); *Montgomery v. Pinchak*, 294 F.2d 492, 498 (3d Cir. 2002).

In determining whether to appoint pro bono counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). If a court finds that the action arguably has merit, it should then consider the following factors (hereafter, the "Tabron factors"): (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; (6) whether the plaintiff can attain and afford counsel on his own behalf. *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997). This list is not exhaustive, nor is any one factor determinative. *Id*. at 458. Rather, the Tabron factors should serve as a guidepost to ensure that courts will only appoint counsel in non-frivolous matters. *Id*.

An appropriate Order follows.

**BY THE COURT:**

*/s/ John M. Gallagher*

**JOHN M. GALLAGHER, J.**

Despite his incarceration and his stated history of mental illness, Taylor has demonstrated an ability to present his claims through statutory screening, which requires consideration under the same standard applied to a motion to dismiss. Taylor has demonstrated an understanding of the legal concepts relative to his claims and has been able to respond to court orders. The legal issues in this case are not so complex as to warrant counsel at this time. Taylor may refile a motion for counsel if his case proceeds to discovery.